UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

REBECCA DAILEY,

                       Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

                       Defendant.
_____

**DECISION & ORDER**

17-CV-6188P

## PRELIMINARY STATEMENT

Plaintiff Rebecca Dailey (Dailey") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income ("SSI").[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 10).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 13, 19). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Dailey's prior applications for benefits were denied on October 1, 2008, December 30, 2010, and April 3, 2013. (Tr. 121).

# DISCUSSION

## I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). When assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1)  whether the claimant is currently engaged in substantial gainful activity;

(2)  if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3)  if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4)  if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity to perform his past work; and

(5)  if not, whether the claimant retains the residual functional capacity to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

3

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.     Dailey's Contentions

Dailey contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 13-1, 21). First, Dailey contends that the ALJ's mental Residual Functional Capacity ("RFC") assessment is flawed because the ALJ failed to give the opinions of her treating psychiatrist controlling weight. (Docket # 13-1 at 24-29; 21 at 7-9). Next, Dailey maintains that the ALJ's credibility analysis is based upon an inaccurate and incomplete recitation of the record. (Docket ## 13-1 at 29-31; 21 at 2-7). Finally, she contends that the ALJ erred in relying on the vocational expert's testimony because the hypothetical posed to the expert was based upon a flawed RFC assessment. (Docket ## 13-1 at 32-34; 21 at 9-11).

## III.    Analysis

I turn first to Dailey's RFC challenge. Among other alleged errors, Dailey contends that the ALJ's RFC assessment is flawed because the ALJ improperly weighed the opinions submitted by her treating psychiatrist, Satyavathy Sarakanti ("Sarakanti"), MD. (Docket ## 13-1 at 24-29; 21 at 7-9).

In her decision, after setting forth Dailey's RFC, the ALJ summarized the record evidence, including Dailey's testimony and the medical records. (Tr. 17-21).[2] In doing so, she

---

[2] The administrative transcript shall be referred to as "Tr. __."

4

addressed at length several medical opinions assessing Dailey's mental limitations for work-related activities. (*Id.*). First, the ALJ discussed the opinion provided by Cheryl Loomis ("Loomis"), PhD, who conducted a consulting psychiatric evaluation of Dailey on June 28, 2013. (Tr. 1902). Loomis opined that Dailey was not limited in her ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule and learn new tasks, but was moderately limited in her ability to maintain attention and concentration and perform complex tasks, and markedly limited in her ability to make appropriate decisions, relate adequately with others, and appropriately deal with stress. (Tr. 1904). The ALJ gave Loomis's opinion only "some weight" on the grounds that she had not reviewed Dailey's medical records and had examined Dailey on only one occasion. (Tr. 18).

Next, the ALJ considered an opinion authored by Robert Oppenheim ("Oppenheim"), LCSW-R, the program director for the Southern Tier Integrated Recovery Services ("STIRS") program that Dailey attended in connection with her mental health treatment with Family Services of Chemung County ("Family Services"). (Tr. 2031, 2103-04). On November 10, 2014, Oppenheim opined, in relevant part, that Dailey was very limited in her ability to understand, remember and carry out instructions, maintain attention and concentration, make simple decisions, interact appropriately with others, maintain socially-appropriate behavior without exhibiting behavior extremes, and function in a work setting at a consistent pace. (Tr. 2104). According to Oppenheim, Dailey was unable to work due to poor impulse control, poor anger management, increased depression and anxiety, and emotional dysregulation. (*Id.*). The ALJ gave this opinion "limited weight" on the grounds that it was "inconsistent with the claimant's demonstrated abilities and activities and was not entirely supported by the claimant's treatment notes." (Tr. 19-20).

5

Additionally, the ALJ considered two opinions authored by Sarakanti in December 2014. In the first opinion, dated December 4, 2014, Sarakanti assessed that Dailey suffered from extreme[3] limitations in her ability to understand, remember and carry out simple or complex instructions, make judgment on simple or complex work-related decisions, interact appropriately with the public, supervisors or coworkers, and respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 2093-95). Sarakanti attributed Dailey's limitations to her depression, poor ability to control her anger and rage, disassociation, anxiety, poor ability to communicate her feelings, and extreme difficulty regulating her emotional responses. (*Id.*). According to Sarakanti, Dailey had recently been hospitalized for rage, depression, anxiety, and emotional dysregulation. (*Id.*). She also opined that Dailey had difficulty processing her emotions, was currently very emotionally fragile, and that any additional stress at the time the opinion was authored would likely precipitate an emotional breakdown. (*Id.*). According to Sarakanti, she began treating Dailey in July 2003, and, according to Dailey's claims during treatment, her limitations first presented themselves in 2004. (*Id.*).

On December 12, 2014, Sarakanti completed an additional medical source statement relating to Dailey. (Tr. 2096-102). In relevant part, Sarakanti opined that Dailey would be unable to meet competitive standards[4] in her ability to remember work-like procedures, understand and remember and carry out very short and simple instructions, maintain attention for a two-hour segment, maintain regular attendance and be punctual within customary, usually strict

---

[3] "Extreme" was defined to mean that there was a major limitation in this area and that the individual had "no useful ability to function in this area." (Tr. 2093-95).

[4] "Unable to meet competitive standards" was defined to mean that the individual would have "noticeable difficulty (e.g., distracted from job activity) from 21 to 40 percent of the workday or work week." (*Id.*).

6

tolerance, work in coordination with or proximity to others without being unduly distracted, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically-based symptoms, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, deal with normal work stress, be aware of normal hazards and take appropriate precautions, understand, remember and carry out detailed instructions, set realistic goals or make plans independently of others, deal with stress of semiskilled and skilled work, interact appropriately with the general public, and maintain socially-appropriate behavior. (*Id.*). Sarakanti also opined that Dailey was seriously limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods, ask simple questions or request assistance, and travel in unfamiliar places. (*Id.*). She found that Dailey was not limited in her ability to sustain an ordinary routine without special supervision, adhere to basic standards of neatness and cleanliness, or use public transportation. (*Id.*). According to Sarakanti, Dailey suffered from extreme emotional dysregulation, social anxiety, and post-traumatic stress disorder ("PTSD") symptoms of hypervigilance. (*Id.*). She opined that Dailey was unable to work in a competitive environment due to her uncontrolled outbursts of anger and emotional constriction combined with emotional outbursts. (*Id.*). Sarakanti further opined that Dailey would be absent from work more than four days a month and that she would need to work in a supported environment with limited hours and limited stress. (*Id.*).

    The ALJ discussed the two opinions authored by Sarakanti, but determined to give them "only some weight." (Tr. 20). According to the ALJ, the limitations assessed by Sarakanti were inconsistent with Dailey's ability to engage in activities of daily living, Loomis's

7

opinion, and the treatment notes. (*Id.*). The ALJ also discounted the opinions, finding them to be inconsistent with one another. (*Id.*). The ALJ further concluded that Sarakanti's opinion that Dailey found most demands of work to be stressful was belied by Dailey's own statements that the work she performed in an essentially supported setting was not stressful. (*Id.*). Finally, the ALJ determined that Sarakanti's statement that Dailey reported limitations beginning in 2004 was inconsistent with Dailey's work record, which demonstrated that she worked at a substantial gainful level in both 2004 and 2005. (*Id.*).

E. Kamin ("Kamin"), PhD, a non-examining consulting psychiatrist also submitted an opinion regarding Dailey's functioning. (Tr. 120-30). In that July 22, 2013 opinion, Kamin opined that Dailey suffered from mild limitations in her ability to perform activities of daily living and maintain social functioning, and moderate limitations in her ability to maintain concentration, persistence, or pace. (*Id.*). With respect to work-related functions, Kamin opined that Dailey would suffer from moderate limitations in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, and set realistic goals or make plans independently of others. (*Id.*). Kamin's opinion appears to rely heavily upon the information contained in Loomis's evaluation; it does not appear that he reviewed Dailey's mental health treatment records from Family Services. (Tr. 122-23, 128). The ALJ gave this opinion only "some weight" on the grounds that Kamin did not examine Dailey and reviewed an incomplete record. (Tr. 16).

Having reviewed the record, particularly the medical opinions, I find that the ALJ's mental RFC assessment is apparently based upon the ALJ's lay interpretation of the medical records without reliance upon any medical opinion. In her decision, the ALJ explicitly accorded "little weight" to the opinion authored by Oppenheim and only "some weight" to the

8

opinions authored by Sarakanti, Loomis and Kamin. (Tr. 16, 18-20). Nothing in the ALJ's decision suggests that she accounted for the relatively significant limitations identified by Loomis, Oppenheim, and Sarakanti in formulating the RFC.

Generally, "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dailey v. Astrue*, 2010 WL 4703599, *11 (W.D.N.Y.) (internal quotation omitted), *report and recommendation adopted by*, 2010 WL 4703591 (W.D.N.Y. 2010). Accordingly, although the RFC determination is an issue reserved for the Commissioner, "[w]here the medical findings in the record merely diagnose [the] claimant's . . . impairments and do not relate those diagnoses to specific residual functional capabilities," as a general rule, the Commissioner "may not make the connection himself." *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) (internal quotation omitted). This is particularly true where the record reflects that the claimant suffers from complex, serious impairments. *See House v. Astrue*, 2013 WL 422058, *4 (N.D.N.Y. 2013). Additionally, the regulations require that "[t]he RFC assessment . . . include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Hogan v. Astrue*, 491 F. Supp. 2d 347, 354 (W.D.N.Y. 2007) (quoting SSR 96-8P, 1996 WL 374184, *7 (1996)).

As the ALJ acknowledged, Dailey has been diagnosed by medical providers as suffering from a variety of mental health impairments, including generalized anxiety disorder, PTSD, anxiety, depressive disorder, personality disorder, impulse control disorder, eating disorder, and bipolar disorder, and she received ongoing treatment to address those impairments.

9

(Tr. 13). Although the ALJ reviewed and discussed Dailey's treatment records, the ALJ seemingly did not rely upon any medical source statement or consultative examination report to assist her in translating the treatment notes into an assessment of Dailey's mental capacity for work-related activities. Rather, the decision demonstrates that the ALJ discounted all of the opinions authored by medical sources contained in the record – opinions which assessed extreme or marked limitations in several areas of work-related functioning – and used her own lay opinion to determine Dailey's RFC.

Although the ALJ reviewed and discussed Dailey's substantial treatment notes, "th[ose] records generally contain bare medical findings and do not address or shed light" on how Dailey's mental impairments affect her mental ability "to perform work-related functions." *Gross v. Astrue*, 2014 WL 1806779, *18 (W.D.N.Y. 2014). Indeed, none of the treatment records contains an assessment or opinion of the functional limitations stemming from Dailey's mental impairments "in quantifiable terms," *Williamson v. Colvin*, 2017 WL 540844, *3 (W.D.N.Y. 2017), and the ALJ rejected the limitations assessed in the medical source statements and consultative examination of record which "translat[ed] the treatment notes into an assessment of [Dailey's] mental capacity for work-related activities," *Ramos v. Colvin*, 2015 WL 925965, *10, 11 (W.D.N.Y. 2015) (noting that although the ALJ "thoroughly reviewed and discussed the treatment records," the absence of a medical source statement or consultative examination report "to assist him in translating the treatment notes into an assessment of [claimant's] mental capacity for work-related activities . . . [resulted in] the ALJ "us[ing] his own lay opinion to determine [claimant's] mental RFC"; "remand is appropriate for the ALJ to obtain a mental RFC assessment or medical source statement from an acceptable medical source concerning [claimant's] mental capabilities").

The ALJ determined that Dailey retained the mental RFC to perform simple work, in a stable, unchanging work environment, that did not require complex interaction or joint efforts with coworkers, or any interaction with the public. (Tr. 16). It is unclear to this Court how the ALJ arrived at this RFC. Rather, the decision suggests that the ALJ used her own lay opinion to determine Dailey's mental RFC. This was error and requires remand. *See Cole v. Colvin*, 2015 WL 9463200, *5 (W.D.N.Y. 2015) ("[b]ecause the ALJ failed to cite to any medical opinions to support her RFC findings, the [c]ourt is unable to determine the rationale for the ALJ's RFC assessment and whether it is supported by substantial evidence"); *Ramos v. Colvin*, 2015 WL 925965 at *10 (remanding for further development of record where record demonstrated that claimant suffered from "medically diagnosed mental impairments, received ongoing treatment, and experienced continuing symptoms of depression and post-traumatic stress disorder that could interfere with her ability to complete work-related activities[,]" but did not contain any medical opinion to assist the ALJ in translating treatment notes into mental RFC) (collecting cases); *Hogan v. Astrue*, 491 F. Supp. 2d at 354 ("[b]ecause the ALJ failed to cite to any medical opinion to support his RFC findings, the [c]ourt is unable to determine if the ALJ improperly selected separate findings from different sources, without relying on any specific medical opinion").

In light of my determination that remand is otherwise warranted, I decline to reach Dailey's remaining contentions. *See Erb v. Colvin*, 2015 WL 5440699, *15 (W.D.N.Y. 2015) (declining to reach remaining challenges to the RFC and credibility assessments where remand requiring reassessment of RFC was warranted). On remand, the ALJ should consider re-contacting Sarakanti to clarify any perceived inconsistencies between her two opinions and should explain more fully how Oppenheim's opinion is inconsistent with the Dailey's daily

activities and treatment notes.  The ALJ should also consider whether a consulting opinion from a physician who reviews the entire record would assist the RFC assessment.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 19)** is **DENIED**, and Dailey's motion for judgment on the pleadings **(Docket # 13)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
September 27, 2018